■ Dora Kremerov et al., Appellants, v Forest View Nursing Home, Inc., Respondent. [808 NYS2d 329]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Queens County (Dollard, J.), dated August 19, 2003, which granted the defendant's motion for leave to amend its answer to include the affirmative defense of assumption of the risk and for summary judgment dismissing the complaint based upon that defense.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion which was for summary judgment dismissing the complaint and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed, with costs payable to the plaintiffs.

The Supreme Court providently exercised its discretion in granting that branch of the defendant's motion which was for leave to amend its answer to include the affirmative defense of assumption of risk (*see Edenwald Contr. Co. v City of New York*, 60 NY2d 957, 959 [1983]; *Sayers v Albicocco*, 298 AD2d 572 [2002]; *Sidor v Zuhoski*, 257 AD2d 564 [1999]). Since the issue of assumption of the risk was addressed by the attorneys during the pretrial depositions, the injured plaintiff, Dora Kremerov (hereinafter the plaintiff), failed to demonstrate that she was prejudiced by the defendant's delay in making the motion for leave to amend (*see Faracy v McGraw Edison Corp.*, 229 AD2d 463 [1996]; *Skinner v Scobbo*, 221 AD2d 334 [1995]).

However, the Supreme Court erred in granting that branch of the defendant's motion which was for summary judgment dismissing the complaint as there were triable issues of fact raised by the plaintiff's opposition to the motion (*see Zuckerman v City of New York*, 49 NY2d 557 [1980]; *Negri v Stop & Shop*, 65 NY2d 625 [1985]).

The plaintiff was 85 years old at the time of her accident, and had been a registered member of the adult daycare program operated by the defendant Forest View Nursing Home, Inc., for approximately two years. She had no health problems. For social reasons she attended the program and participated in the various activities the defendant offered to its members. As a member of the program, she was familiar with the layout of the premises and voluntarily engaged in numerous recreational activities, including gymnastic exercises, dancing, and swimming. On the date of the plaintiff's accident, one of the recreation coordinators employed by the defendant set up a makeshift bowling alley in the dining hall, complete with bowling-type pins and a rubber "bowling ball" weighing approximately five pounds. He provided the members with general instructions and demonstrated how to perform the bowling activity.

The elderly plaintiff, who was born in Ukraine and required the aid of a Russian interpreter, had never bowled before, rolled her first ball successfully, knocking down some pins. In attempting to roll the ball a second time, she fell into a sitting position and was injured. At the time of her accident, the plaintiff was wearing leather shoes with wide heels that were approximately $1^{1}/_{4}$ inches high. Initially, she testified that the heel of her shoe "broke," she twisted her foot, and fell to the ground. However, upon further questioning she acknowledged that the shoe heel did not break. Rather, she claimed that her accident occurred when her right foot "twisted" inside her shoe.

The defendant did not provide the plaintiff or other members with bowling shoes. As part of the general instructions given, the members were advised to wear comfortable shoes for the various recreational activities so as not to slip or fall. Although the defendant's recreation coordinator, Isaac Pleshtiyev, was not aware of and did not advise the members of any inherent risks associated with bowling, he did consider it a risk to bowl while wearing heeled shoes. Nevertheless, there were no instructions given to the members regarding appropriate footwear on the date of the incident and, contrary to the findings of the Supreme Court, there is nothing in the record to establish that the plaintiff was advised not to wear heeled shoes. The plaintiff testified that she had never experienced any problems with her

shoes before this incident. The shoes were closed and the laces were tied. As such, there is nothing to suggest that the plaintiff's shoes did not fit the classification of "comfortable shoes."

The plaintiff contends, inter alia, that the defendant's negligent failure to advise her that she should not bowl with heeled shoes unreasonably heightened the risk of injury and, as such, was a proximate cause of her injuries. The defendant, in moving for summary judgment, contends that the plaintiff voluntarily participated in the activity offered for the day and, therefore, assumed the risk associated with bowling. In support of its motion, the defendant submitted the affidavit of Ellen Gordon, the program director and a registered nurse, who offered her opinion that there is an inherent risk of injury, including twisting one's ankle, associated with any recreational activity, including bowling. In opposition, the plaintiff relied on the affidavit of David H. Fried, the President of DEP Accident Analysis, Inc., a sports, recreation, and educational safety analysis and consulting firm. Mr. Fried's background in physical education and recreation was sufficient to qualify him as an expert (*see Price v New York City Hous. Auth.*, 92 NY2d 553, 559 [1998]; *Locilento v Coleman Catholic High School*, 134 AD2d 39 [1987]). He opined, inter alia, that the defendant negligently failed to advise and warn the plaintiff of the heightened risk or injury associated with bowling in heeled shoes and, accordingly, considering the plaintiff's novice status, she did not appreciate the risk of injury while bowling in heeled shoes.

A voluntary participant in a sporting or recreational activity consents to those commonly-appreciated risks which are inherent in and arise out of the nature of the activity generally, and which flow from such participation (*see Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *Benitez v New York City Bd. of Educ.*, 73 NY2d 650 [1989]; *Leslie v Splish Splash at Adventureland*, 1 AD3d 320 [2003]). Participants, however, do not assume risks which have been unreasonably increased or concealed over and above the usual dangers inherent in the activity (*see Morgan v State of New York, supra* at 485; *Benitez v New York City Bd. of Educ., supra* at 657-658; *Muniz v Warwick School Dist.*, 293 AD2d 724 [2002]). Awareness of the risk is " 'to be assessed against the background of the skill and experience of the particular plaintiff' " (*Morgan v State of New York, supra* at 486, quoting *Maddox v City of New York*, 66 NY2d 270, 278 [1985]).

Here, the evidence submitted by the defendant in support of its motion conflicted with its position that the plaintiff fully comprehended the risks involved in the bowling activity. Mr.

Pleshtiyev, the recreation coordinator supervising the plaintiff's activities at the time of her injury, testified that he was not aware of any risks inherent in bowling but that he did consider it a risk to bowl while wearing heeled shoes. Ms. Gordon, on the other hand, opined that the risk of twisting one's ankle is inherent in this and other recreational activities. It was disingenuous for the defendant to suggest that the plaintiff, elderly and a novice, should be charged with knowledge and assumption of a risk about which the defendant's experienced employees are in disagreement. In light of this conflict in the proof submitted in support of the motion, the defendant failed to establish its prima facie entitlement to summary judgment (*see Clark v Chau Shing Wong*, 293 AD2d 640 [2002]).

Even assuming that the risk of twisting her ankle and falling while bowling was within the realm of common human experience and should have been appreciated by the injured plaintiff, Mr. Fried's affidavit supports the plaintiff's contention that she was not, but should have been, warned and instructed about an enhanced risk, known to Mr. Pleshtiyev, of bowling in heeled shoes (*see Driever v Spackenkill Union Free School Dist.*, 20 AD3d 384 [2005] [question of fact existed as to whether coach should have intervened to prohibit cheerleading stunt in light of known enhanced danger]; *Baker v Briarcliff School Dist.*, 205 AD2d 652 [1994] [question of fact existed as to whether coach adequately warned players of enhanced risks in not wearing proper gear]). The defendant submitted no evidence to suggest that the plaintiff had the requisite knowledge or experience to comprehend or appreciate the heightened risk of injury from bowling in heeled shoes about which Mr. Pleshtiyev and Mr. Fried are in agreement. Since there are triable issues of fact, the Supreme Court erred in granting the defendant's motion for summary judgment (*see Hubbard v East Meadow Union Free School Dist.*, 277 AD2d 353 [2000] [summary judgment was improperly granted in light of question of fact as to whether supervising coach failed to direct players to use proper gear increased risk of injury]). Crane, J.P., Skelos, and Lifson, JJ., concur.

Mastro, J., concurs in part and dissents in part and votes to affirm the order with the following memorandum: Like the majority, I discern no improvident exercise of the Supreme Court's broad discretion in granting the defendant leave to amend its answer to include the affirmative defense of assumption of risk. However, I conclude that the defendant was entitled to summary judgment based upon that defense, and I would affirm the order appealed from.

The injured plaintiff, Dora Kremerov (hereinafter the plaintiff), was 85 years old at the time of her accident and had been a registered member of the free adult daycare program at the defendant Forest View Nursing Home, Inc., for approximately two years. She had no health problems, and she attended the program and participated in the various activities that it offered for social reasons. As a member of the program, she was familiar with the layout of the premises and voluntarily engaged in numerous recreational activities, including gymnastic exercise, dancing, and swimming. On the date of the plaintiff's accident, one of the recreation therapists employed by the defendant set up a makeshift bowling alley at the premises, complete with bowling-type pins and a rubber "bowling ball" weighing approximately five pounds. He provided the members, including the plaintiff, with general instructions and a demonstration regarding how to perform the bowling activity. Additionally, on previous occasions, members of the program had been expressly instructed to wear "comfortable" shoes and not to wear "shoes with heels" when engaging in activities offered by the program.

The plaintiff, who claimed that she had never bowled before, rolled her first ball successfully, knocking down some pins. In attempting to roll the ball a second time, she fell into a sitting position and was injured. At the time of her accident, the plaintiff was wearing leather shoes with wide heels that were approximately $1^{1}/_{4}$ inches high. Although she initially testified at her deposition that the heel of one shoe broke and caused her to fall, she subsequently corrected herself and explained that her heel did not break. Rather, she claimed that her accident occurred when her right foot simply "twisted" inside her shoe.

Following the commencement of this negligence action to recover damages for the plaintiff's injuries, the defendant moved for leave to amend its answer to assert the defense of primary assumption of risk and, upon that amendment, for summary judgment dismissing the complaint based upon that defense. The Supreme Court correctly granted that motion in its entirety.

It is well settled that "by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of [such activity] generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *see Leslie v Splish Splash at Adventureland*, 1 AD3d 320 [2003]). Moreover, the participant's awareness of the risk is "to be assessed against the background of the skill and experience of the particular

plaintiff" (*Maddox v City of New York*, 66 NY2d 270, 278 [1985]).

The defendant in this case demonstrated prima facie its entitlement to judgment as a matter of law by establishing that the plaintiff understood and voluntarily assumed the risks inherent in the bowling activity, including the obvious risk of twisting one's ankle which is common to so many sports and activities (*see generally Morgan v State of New York, supra*; *Milea v Our Lady of Miracles R.C. Church*, 290 AD2d 424 [2002]). Indeed, the defendant relied upon the plaintiff's own deposition testimony regarding her voluntary participation in the makeshift bowling activity after witnessing a demonstration of how the activity was to be performed. The defendant further relied upon the deposition of Isaac Pleshtiyev, a recreation therapist employed by the defendant. Mr. Pleshtiyev gave uncontroverted testimony that program participants were instructed to avoid wearing shoes with heels when engaging in recreational activities on the premises. Furthermore, the defendant submitted the affidavit of its adult daycare program director, Ellen Gordon, who, as a registered nurse, articulated what is already obvious to everyone associated with this case, including the injured plaintiff—that the risk of twisting one's ankle while engaging in any recreational activity involving the use of one's legs (including the makeshift bowling activity) is inherent in the activity itself.

In this regard, the testimony of Mr. Pleshtiyev was consistent with the affidavit of Ms. Gordon. Read in its proper context, Mr. Pleshtiyev testified that he was not aware of any risks inherent in the activity of bowling *in particular*, while Ms. Gordon observed that the risk of twisting one's ankle was one common to bowling, basketball, dancing, and many other activities.

While the plaintiffs produced the affidavit of a sports accident expert in opposition to the motion, that affidavit merely recited in conclusory fashion that the plaintiff's act of engaging in the makeshift bowling activity while wearing low-heeled shoes increased the risk that she would fall, and that a woman of her age who had never bowled before would be unable to comprehend and appreciate the risks inherent in the activity. However, since the expert's conclusions were based on no empirical, scientific, or medical data or analysis, they were impermissibly speculative and insufficient to defeat the defendant's motion for summary judgment (*see Rochford v City of Yonkers*, 12 AD3d 433 [2004]). Moreover, as accurately observed by the Supreme Court, neither the plaintiff's affidavit nor that of her expert provided any evidence that her choice of footwear proximately

caused her foot to twist within her shoe. In any event, the record demonstrates that, despite program participants being instructed to the contrary, the plaintiff elected to engage in the activity while wearing heeled shoes, and any purportedly increased risk which may thereby have resulted was attributable to her own conduct rather than that of the defendant. Similarly, the expert's blithe assertion that someone of the plaintiff's age and experience would be unable to understand the risks of performing this bowling activity in heeled shoes finds no evidentiary support in the record and appears to far exceed the scope and area of his expertise. To the contrary, while the plaintiff testified that she had never engaged in the activity before, she was present when the instructions regarding how to perform the activity were given, she witnessed a demonstration of the activity, and she successfully engaged in the activity at least once before her accident. Moreover, the risk of twisting her ankle and falling clearly was within the realm of common human experience and could be appreciated by the plaintiff, who was an active participant in other activities at the premises and who possessed a wealth of life experience upon which to draw. In this regard, the plaintiff was found medically fit to participate in daycare program activities, and there is no indication in the record that her faculties were in any respect diminished or compromised. Moreover, a reduced level of awareness of risk may not be presumed solely from her status as a senior citizen. Advanced age alone signals neither the loss of common sense nor the abdication of personal responsibility. Thus, the plaintiffs' reliance upon cases involving infants who lacked the requisite level of experience and sophistication to appreciate the risks inherent in certain activities is misplaced (*see e.g. Driever v Spackenkill Union Free School Dist.*, 20 AD3d 384 [2005]; *Hubbard v East Meadow Union Free School Dist.*, 277 AD2d 353 [2000]; *Baker v Briarcliff School Dist.*, 205 AD2d 652 [1994]). Indeed, all of these cases involved minor student athletes participating in organized team sports with trained coaching staffs. In each matter, the coach allegedly neglected to provide proper instruction as to the activity or as to the use of appropriate protective equipment provided by the school. As such, those cases are manifestly distinguishable from the adult injured plaintiff's knowing participation in the makeshift recreational activity at issue here.

Accordingly, neither the plaintiff's own affidavit nor the conclusory submission of her expert sufficed to raise a triable issue of fact with respect to the plaintiff's assumption of the risk in this case, or of the existence of any other dangerous or defective condition created by the defendant (*see Loewenthal v*

*Catskill Funland,* 237 AD2d 262 [1997]). The Supreme Court therefore properly granted that branch of the defendant's motion which was for summary judgment dismissing the complaint.